UNITED STATES DISTRICT COURT

FOR THE

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MICHAEL JOHN WILHELM AND BETSY JANE WILHELM § § § § *Plaintiffs* § § v. § § THOR MOTOR COACH, INC., AND § DIXIE MOTORS, L L C § § *Defendants* § | CIVIL ACTION NO: JURY TRIAL REQUESTED |

## COMPLAINT

### I. Parties

1. Plaintiffs, MICHAEL JOHN WILHELM and BETSY JANE WILHELM, now and have been at all times material hereto residents of the State of Pennsylvania, domiciled at 55 Cavalry Field Road, Gettysburg, Pennsylvania 17325;

2. Defendant, Thor Motor Coach, Inc., (hereinafter "Thor"), is a Delaware corporation with its principal place of business and its domicile at 1209 Orange Street, Wilmington, Delaware 19801, authorized to do and doing business in the State of Louisiana, whose agent for service of process is C T Corporation System, 3867 Plaza Tower Drive, Baton Rouge, LA 70816; and

3. Defendant, Dixie Motors, LLC, (hereinafter "Dixie"), is a Louisiana limited liability company domiciled at 10241 Destination Dr., Hammond, Louisiana 70403, whose agent for service of process is T. Jay Seale, III, 200 N. Cate Street, Hammond, LA 70401.

## II. Jurisdiction

4.     This Court has jurisdiction over this controversy or cause of action because the plaintiffs are citizens of the State of Pennsylvania; defendant Thor Motor Coach, Inc., is a corporation incorporated under the laws of Delaware; and defendant Dixie Motors, LLC, is a Louisiana limited liability company. The amount in controversy, without interest and costs, exceeds the sum or value specified by 28 U.S.C. § 1332 because, pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(2), and other causes of action set forth herein, defendants are liable for a return of the purchase prices, and expenses surrounding the sale, and defendant Thor Motor Coach, Inc., is also liable for attorney's fees and damages, including general damages. The court has supplemental jurisdiction under 28 USC § 1367 over Plaintiff's state law claims because said claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article 3 of the United States Constitution; those state law claims include redhibition, and negligent repair which provide for damage categories that are in addition to Magnuson-Moss Warranty Act damages. Additionally, plaintiffs are entitled to recover a sum equal to the aggregate amount of costs and expenses, including attorney's fees, if Plaintiffs prevail; the purchase price, plus all other damages are as follows:

    1.    The sales price of the Fifth Wheel was $82,995.00;

    2.    An additional expense surrounding the sale was sales tax of $4,979.70;

    3.    An additional expense surrounding the sale was a charge for registration of $383.50;

    4.    The complainants have entered into a contingency fee contract of at least 30% with undersigned counsel, with expected attorney's fees exceeding $25,000.00;

5. Plaintiffs further request general damages, including damages for mental anguish, humiliation, and inconvenience under Louisiana Civil Code Article 1998 and under the Louisiana Unfair Trade and Consumer Protection Law, La RS 51:1402;

6. The complainants have chosen a return of their purchase price back under the Magnuson-Moss Warranty Act.  Declaratory relief is available pursuant to 28 USC §§ 2201 and 2202.

7. Any value of the plaintiff's use of the value, which would otherwise be credited against the amounts set forth above, has been overridden by the inconveniences associated with and interruptions in use associated with the defective nature of the vehicle and the defendant's constant attempts to repair

### III.  Venue

5. Venue is proper in this district under 28 U.S.C. §1391(a)(2) because a substantial part of the events or omissions giving rise to the claim (the sale and communications and notice to the seller) occurred in this district.

### IV. Conditions Precedent

6. All conditions precedents have been performed or have occurred.

### V.  Facts

#### A.  The Transaction

7. On July 12, 2016, Plaintiff purchased a new 2017 Thor Synergy, VIN WDAPF4CC5G9643415 (hereinafter "Synergy") from defendant Dixie Motors, LLC.  The motor home was purchased primarily for Plaintiff's personal use and as a recreational vehicle.  The sales contract was presented to Plaintiff at the dealership and was executed at the dealership in Hammond, Louisiana.

8. The "Total Cash Delivered Price", including sales tax and Registration of the Synergy was $88,358.20, excluding finance charges. Plaintiffs paid that much in cash at the time of the sale.

### B. Implied Warranties

9. As a result of the sale of the motor home by Defendant Dixie Motors, LLC, to Plaintiffs, an implied warranty of merchantability and fitness for a particular purpose arose in the transaction which included the guarantee that the motor home was fit for the ordinary purpose for which such vehicles are purchased.

10. Subsequent to the sale, an implied warranty arose in connection with the repairs performed by the Defendants. Specifically, the Defendants impliedly warranted that the repair work had been performed in a good and workmanlike manner.

### C. Express Warranties

11. In addition to the implied warranties that arose in the transaction, certain representations and express warranties were made, including, that any malfunction in the occurring during a specified warranty period resulting from defects in material or workmanship would be repaired, and that repair work on the Synergy had, in fact, repaired the defects.

12. Plaintiffs' purchase of the Synergy was accompanied by express warranties offered by Defendant, Thor, and extending to Plaintiffs. These warranties were part of the basis of the bargain of Plaintiff's contract for purchase of the Synergy.

13. The basic warranty covered any repairs or replacements needed during the warranty period due to defects in factory materials or workmanship. Any required adjustments would also be made during the basic coverage period. All warranty repairs and adjustments, including parts and

labor, were to be made at no charge.  Additional warranties were set forth in the Synergy's warranty booklet and owners manual.

### D.  Actionable Conduct

14. In fact, when delivered, the Synergy was defective in materials and workmanship, which defects were hidden at the time of the sale, but with such defects being discovered within the warranty periods.  Within the first trip after purchase, Plaintiff began experiencing defective conditions with the Synergy.  Many defective conditions have occurred since purchase, including, but not limited to:

   a. Cabin door: air noise and not aligned properly; excessive air noise when in transport;

   b. Slide out white seal torn, lower right corner, inside;

   c. Generator has been dropping electric load and giving code E7;

   d. Rear AC unit shuts off and Generator sheds all cabin electrics and gives code E7 on thermostat; generator also seems too weak to carry loads;

   e. The drawer catch on one of the cabinets under the bed is inoperative and allows the drawer to open while being driven; the drawer has to be shut every time the coach is under way; the issue appears to arise from a twisted track and hardware where it connects to the wood, as originally installed;

   f. The bathroom faucet leaks when used;

   g. The coach is missing the driver's seat recline adjustment knob;

   h. Leak in cab-over bunk window, passenger side, no sealant around that window. Other side is fully sealed with very sloppy application of sealant. Installers smeared sealant on center of window and drivers door window seal and did not bother to clean it off. It is unknown if both bunk Windows sealed at factory with black sealant;

i. Kitchen outlet and GFI are questionable;

j. Bathroom vanity has brad nails that chipped wood on assembly, damaging wood exterior of vanity;

k. Mirror pulling out from wall beside couch.

l. King bed center section slide out wood base, shifts to left and is not supported, getting ready to break or get damaged. Should be a tighter fit, causing damage to wood;

m. Vehicle air conditioner works intermittently and throws ice out of supply vents;

n. In aft bedroom, under aft cabinets, where speakers are mounted, there is hardware rolling around as coach rocks from left to right. Seems to have space between bottom of cabinet and speaker mounts. May need to remove speaker and locate loose hardware;

o. RV delivered with no manuals; plaintiffs had to download PDF copies. Manuals were received via UPS, but Mercedes Maintenance manual is missing;

p. Hot air (heat) supply duct cover at base of cabinet installed on top of awning switch plate. This holds duct cover out from wall.

q. Bow in sink base cabinet sidewall. Side facing coach door.

r. Outside water panel and shower line leaking.

s. Winegard T4 in motion Satellite TV not working with Direct TV. Seems like hardware or wiring issue;

t. Shower base, surround kit big gap at bottom beside toilet. Will allow water to go between wall and shower causing problems later. Shower not used for this reason;

u. Top of Microwave vibration - very loud. You can see the metal sheet inside vent over microwave that vibrates;

v. Skylight rattles, stuffed newspaper in it to quiet the vibration.

      w.      Several coach windows have broken extension / retraction hardware. This is definitely the weakest item on the coach. The forward left side window hardware was broken before the coach reached our house from initial delivery drive. This hardware is so fragile. And when it is broken, it is very dangerous to drive the RV because the windows are not held tightly closed and wind can pull them out. Should have locking latch installed or heavy duty hardware fabricated to replace;

      x.      Smells like propane leaks. Several people smelled propane. Inspect for leaks.

      y.      Carpet area not bound behind passenger seats.

15. Since purchase, Plaintiffs have returned Synergy to authorized warranty service dealers for repairs on numerous occasions, and have contacted representatives of Dixie Motors, LLC, directly. Despite this prolonged period during which Defendants were given the opportunity to repair the Synergy, the many significant conditions were not repaired, including the entry door. Defendants failed to repair the vehicle so as to bring it into conformity with the warranties set forth herein. From the date of its purchase, the Synergy continues to this day to exhibit some of the non-conformities described herein.

16. The defects experienced by Plaintiffs with the Synergy substantially impaired its use, value and safety.

17. Plaintiffs directly notified defendants and both of them of the defective conditions of the on numerous occasions. Plaintiffs notified Defendants that they wanted a rescission of the sale of the Synergy but Defendants have failed and refused to buy back Plaintiffs' defective Synergy.

**Count 1:  Violations of the Louisiana Redhibition Laws**

18. Plaintiffs re-allege and incorporate by reference herein each and every allegation set forth in the preceding paragraphs.

19. The Synergy is a "thing" under La. Civil Code Articles 2520, *et seq*.

20. Thor is a "manufacturer" under La. Civil Code Articles 2520, *et seq*.

21. Dixie is a "seller" under La. Civil Code Articles 2520, *et seq*.

22. Plaintiffs are each a "buyer" under in La. Civil Code Articles 2520, *et seq*.

23. The defects described in the Synergy vehicle meet the definition of a redhibitory defect as defined in La. Civil Code Articles 2520, *et seq*.

24. Plaintiffs have provided the Defendants sufficient opportunity to repair their defective Synergy vehicle.

25. Plaintiffs have performed each and every duty required of them under Louisiana Redhibition Laws, except as may have been excused or prevented by the conduct of the Defendants, as herein alleged.

26. The hidden defects in the Synergy existed at the time of sale, but were not discovered until after delivery. The Synergy is not usable or its use is so inconvenient that neither Plaintiffs nor a reasonably prudent buyer would have purchased the RV had they known of the defects prior to the sale.

27. Furthermore, Defendants failed to perform the repair work in a good and workmanlike manner. Further, Defendant Dixie Motors, LLC, failed to properly inspect the vehicle before delivery and therefore negligently allowed the unit to be sold to the plaintiffs without proper preparation work and/or repairs prior to sale. This conduct by those Defendants constitutes a breach of the implied warranties under Louisiana law, and entitles Plaintiff to a rescission of the sale, return of the purchase price, plus all collateral costs of the sale, insurance premiums, and out of pocket expenses.

28.     Under Louisiana Redhibition laws, Plaintiffs are entitled to recover a sum equal to the aggregate amount of costs and expenses, including attorney's fees, if Plaintiffs prevail. As a proximate result of Defendants' misconduct as alleged herein, and in an effort to protect their rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiffs to employ the legal services of Fred A. Pharis. Plaintiffs have incurred and continue to incur legal fees, costs and expenses in connection therewith.

**Count 2:  Violation of the Magnuson-Moss Warranty Act**

29.     Plaintiffs re-allege and incorporate by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

30.     Each Plaintiff is a "consumer" as defined in the Magnuson-Moss Warranty Act (hereinafter "Warranty Act"), 15 U.S.C. § 2301(3).

31.     Defendants, Thor and Dixie, are each a "supplier" and "warrantor" as defined in the Warranty Act, 15 U.S.C. § 2310(4) and (5).

32.     The Synergy is a "consumer product" as defined in the Warranty Act, 15 U.S.C. § 2301(l), because it is normally used for personal purposes and Plaintiff in fact purchased it wholly or primarily for personal use.

33.     The express warranties pertaining to the Synergy are a "written warranty" as defined in the Warranty Act, 15 U.S.C. § 2301(6).

34.     The actions of Defendants in failing to tender the Synergy to Plaintiffs free of defects and refusing to repair or replace the defective unit constitutes a breach of the written and implied warranties and hence a violation of the Magnuson-Moss Warranty Act.

35. Plaintiffs have performed all things agreed to and required of them under the sales contract and warranty terms, except as may have been excused or prevented by the conduct of Defendants as herein alleged.

36. As a direct and proximate result of the acts and omissions of Defendants and each of him as set forth hereinabove, Plaintiff has been damaged in an amount exceeding the threshold for original jurisdiction on the basis of diversity of citizenship of all parties, according to proof at trial.

37. Pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(2), Plaintiff is entitled to recover a sum equal to the aggregate amount of costs and expenses, including attorney's fees, if Plaintiff prevails. As a proximate result of Defendants' misconduct as alleged herein, and in an effort to protect his rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiff to employ the legal services of Fred A. Pharis. Plaintiff has incurred and continue to incur legal fees, costs and expenses in connection therewith.

### Count 3: Negligent Repair

38. Plaintiff re-alleges and incorporates herein by reference each and every allegation set forth in the preceding paragraphs. For purposes of this cause of action, the word "Defendants" refers to Thor and Dixie.

39. After the sale, Plaintiff delivered the Synergy to authorized repair facilities of Defendant Thor for repairs of the defective conditions covered under the express and implied warranties set forth hereinabove; plaintiffs also, however, contacted defendant Dixie and complained of their failure to detect and correct several of the defects prior to the sale; during the contacts, it was represented by employee(s) of Dixie that the door issue would be fixed by Dixie, but it was not.

40.     On each such occasion, Plaintiff is informed and believes, and thereupon allege, that Defendants were either contacted or promised attempted the repairs of the Synergy pursuant to their obligations under the express and implied warranties.  Defendants owed a duty of care to Plaintiffs to perform those repairs on the Synergy in a good and workmanlike manner within a reasonable time.  Further,  Defendant has a "high duty" to detect and correct defects when consumers such as the plaintiff is subject to the warranty repair system initiated by Defendant Thor. The Defendants breached this duty to Plaintiffs.

41.     Defendants' attempted repairs of Plaintiffs' Synergy were refused or done so negligently, carelessly, and recklessly as to substantially impair the Synergy 's use, value, and safety in its operation and use.  At no time did any repair attempt on Plaintiffs' Synergy fully and completely repair the unit, nor were many of the defective conditions fixed or significantly improved by the Defendants' repair attempts.  Nonetheless, each time Plaintiff picked up the vehicle after the Defendants Thor's repair attempts (through dealerships), Defendant Thor represented to Plaintiffs that the repairs were complete, and Plaintiffs relied upon these statements by the Defendant Thor; defendant Dixie attempted no post-sale repairs at all.

42.     As a direct and proximate result of Defendants' negligent failure to repair the  within a reasonable time or within a reasonable number of attempts, Plaintiffs were unable to use their Synergy for weeks at a time.  As a further direct and proximate result of Defendants' failure to repair the Synergy in a timely and workmanlike fashion, Plaintiffs were forced repeatedly to take the Synergy in for further repair attempts and to leave the Synergy for periods of time at great inconvenience to Plaintiffs.

## VI. Damages

43. The conduct described above has been and is a producing and proximate cause of damages to Plaintiff.

44. Plaintiffs' damages include rescission of the sale including all collateral costs at the time of the sale, any and all finance charges, insurance premiums, maintenance costs, repair costs, damages, together with applicable penalties and attorney fees allowed by law, and with legal interest upon the entire sums awarded from the date of sale or judicial demand, whichever is applicable, until paid, and for all costs of these proceedings.

45. The damages Plaintiff has suffered as a direct and proximate result of Defendants' actions exceed $75,000.00.

## VII. Request for Rescission

46. Plaintiffs seeks the remedy of rescission of the sales contract.

47. Plaintiffs revokes his acceptance of the Synergy for the reason that its defects substantially impair its use, value, and safety to Plaintiffs and the acceptance was based on Plaintiff' reasonable reliance on the false representations and warranties of the Defendants that the defects in the Synergy would be repaired, and no reasonable prudent buyer would have purchased the Synergy with knowledge of these defects prior to the sale. Accordingly, Plaintiffs seek a cancellation of the sales contract and an order of the court restoring to them the money obtained by Defendants as a result of the false representations and breaches of express and implied warranties as set forth above. Plaintiffs also offers to return the Synergy to the Defendants.

## VIII.  Attorney Fees and Costs

48. Plaintiffs are entitled to recover a sum equal to the aggregate amount of costs and expenses, including attorney's fees, if Plaintiffs prevail.  As a proximate result of Defendants' misconduct as alleged herein, and in an effort to protect their rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiffs to employ the legal services of Fred A. Pharis.  Plaintiffs have incurred and continue to incur legal fees, costs and expenses in connection therewith.

## IX.  Prayer for Relief

49. For these reasons, Plaintiffs pray for judgment against the Defendants for the following:

   a. For general, special and actual damages according to proof at trial;

   b  Rescinding the sale of the new 2017 Thor Synergy, VIN WDAPF4CC5G9643415 and returning to Plaintiffs the purchase price including all collateral costs and reasonable expenses incurred at the time of the sale, insurance premiums, maintenance costs, repair costs, and damages;

   c. For incidental and consequential damages according to proof at trial;

   d. Out of pocket damages for expenditures related to any cost of repairs, deductibles; and towing charges;

   e. Any diminution in value of the attributable to the defects;

   f. Past and future economic losses;

   g. Prejudgment and post-judgment interest;

   h. Attorney fees;

   I. Costs of suit, expert fees and litigation expenses; and

   j. All other relief this Honorable Court deems appropriate.

## X.   Demand for Jury Trial

50.   Plaintiffs hereby demand trial by jury to the extent authorized by law.

                      S/Fred A. Pharis
**FRED A. PHARIS**
of **PHARIS LAW OFFICES**
831 DeSoto Street
Alexandria, LA  71301
Telephone:  (318) 445-8266
Fax: (318) 445-5981
email: fpharis@pharislaw.com
LA Bar Roll No. 1536
**ATTORNEY FOR MICHAEL JOHN WILHELM AND BETSY JANE WILHELM**