**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **MICHAEL JOHN WILHELM, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 17-1148** |
| **THOR MOTOR COACH, INC., ET AL.** | **SECTION "B"(4)** |

**ORDER AND REASONS**

Before the Court is Defendants' "Motion to Stay Proceedings Pending Arbitration." Rec. Doc. 11. Plaintiffs timely filed an opposition memorandum. Rec. Doc. 14. Defendants then requested (Rec. Doc. 15), and were granted (Rec. Doc. 16), leave to file a reply memorandum (Rec. Doc. 17). For the reasons discussed below,

**IT IS ORDERED** that the motion (Rec. Doc. 11) is **GRANTED**.

**I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

This case arises out of the July 12, 2016 sale of a motorhome, a 2017 Thor Synergy assembled by Defendant Thor Motor Coach, Inc. ("Thor"), from Defendant Dixie Motors, LLC ("Dixie Motors") to Michael and Betsy Wilhelm ("Plaintiffs"). Rec. Doc. 1 at ¶¶ 7-8. After purchasing the motorhome, Plaintiffs noticed several minor defects, including, for example, excessive air noise from the cabin door, a torn seal, a twisted track on a drawer, a leaky bathroom faucet, a missing driver's seat adjustment knob, and loose hardware. *Id.* at ¶ 14. Plaintiffs returned the motorhome to various authorized dealers for repairs "on numerous occasions," but the defects remained. *Id.* at ¶ 15. Plaintiffs informed Defendants of

1

the defects and requested a rescission of the sale. *Id.* at ¶ 17. When Defendants refused, Plaintiffs filed the instant suit on February 9, 2017, alleging violations of Louisiana redhibition laws (LA. CIV. CODE ANN. art. 2520), violations of the Magnuson-Moss Warranty Act (15 U.S.C. §§ 2301-12), and negligent repair, and requesting damages, rescission, and attorney's fees and costs. *Id.* at ¶¶ 18-48.

## II. THE PARTIES' CONTENTIONS

Defendants allege that Plaintiffs entered into a written arbitration agreement when they purchased the motorhome. Rec. Doc. 11-2 at 1.

Plaintiffs respond that the arbitration agreement (1) is invalid, because it was not signed by a representative of either Defendant; (2) is a violation of the Louisiana Unfair Trade Practices Act ("LUTPA"); and/or (3) does not cover claims asserted against Thor, which was not a party to the agreement. Rec. Doc. 14 at 1.

## III. LAW AND ANALYSIS

"Arbitration is favored in the law." *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 526 (5th Cir. 2000) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)). Section 2 of the Federal Arbitration Act ("FAA") provides that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by

2

arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.[1]

According to the courts, § 2 "is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24 (citing § 2). It was "Congress's clear intent . . . to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Id.* at 22. Essentially, the FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." *Id.* at 24-25.

Thus, "where the contract contains an arbitration clause, there is a presumption of arbitrability." *Tittle v. Enron Corp.*, 463 F.3d 410, 418 (5th Cir. 2006) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)) (citing

---

[1] Thus, as a threshold matter, the FAA applies where the transaction at issue involves commerce. *See, e.g. New Orleans Cold Storage & Warehouse Co., Ltd. v. Grenzebach Corp.*, No. 15-6642, 2016 WL 279012, at *4 (E.D. La. Jan. 22, 2016) (noting that "[t]he Fifth Circuit has held that '[c]itizens of different states engaged in performance of contractual operations in one of those states are engaged in a contract involving commerce under the FAA.'") (quoting *Mesa Operating Ltd. P'ship v. La. Intrastate Gas Corp.*, 797 F.2d 238, 243 (5th Cir. 1986) (citing § 2)). Here, Plaintiffs are Pennsylvania citizens who purchased a motorhome assembled in Indiana from a dealer in Louisiana. *See* Rec. Docs. 1 at ¶¶ 1-3; 11 at 1. Plaintiffs do not dispute that this transaction involved interstate commerce.

3

*Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002) (noting that any doubts regarding arbitrability should be resolved in favor of arbitration) (citing *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984))). Nonetheless, § 2 contains a savings clause that provides that an agreement to arbitrate is "enforceable, <u>save upon such grounds as exist at law or in equity for the revocation of any contract</u>." § 2 (emphasis added). Accordingly, to determine if the parties agreed to arbitrate, the court should consider "(1) whether a valid agreement to arbitrate between the parties exist; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1065 (5th Cir. 1998) (citing *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996); *In re Hornbeck Offshore (1984) Corp.*, 981 F.2d 752, 754 (5th Cir. 1993); *Midwest Mech. Contractors, Inc. v. Commonwealth Constr. Co.*, 801 F.2d 748, 750 (5th Cir. 1986)).

As to the first inquiry, courts "apply 'ordinary contract principles.'" *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003) (quoting *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073, *opinion supplemented on denial of reh'g,*, 303 F.3d 570 (5th Cir. 2002)); *see also Webb*, 89 F.3d at 258. Under Louisiana law, a valid contract requires capacity, consent, a lawful cause, and a valid object. *Granger v. Christus Health Ctr. La.*, 12-1892, p. 33 (La. 6/28/13); 144 So. 3d 736,

760-61 (internal citations omitted); *see also* LA. CIV. CODE ANN. arts. 1918, 1927, 1966, 1971. Consent is "established through offer and acceptance," which may generally "be made orally, in writing, or by action or inaction that under the circumstances is clearly indicative of consent." LA. CIV. CODE ANN. art. 1927. Further, "it is the burden of the party seeking to enforce a contract to show the contract exists." *FIA Card Servs., N.A. v. Weaver*, 10-1372, p. 16 (La. 3/15/11); 62 So. 3d 709, 719 (citing LA. CIV. CODE ANN. art. 1831; *Kosmala v. Paul*, 569 So. 2d 158, 162 (La. App. 1 Cir. 1990), *writ denied,* 572 So. 2d 91 (La. 1991) ("The party seeking to enforce arbitration provisions has the burden of showing the existence of a valid contract to arbitrate") (citing *Ciaccio v. Cazayoux*, 519 So. 2d 799, 800 (La. App. 1 Cir. 1987))).

As to the second inquiry, "the Fifth Circuit distinguishes between broad and narrow arbitration clauses." *Broussard v. First Tower Loan, LLC*, 150 F. Supp. 3d 709, 724 (E.D. La. 2015), *as modified on denial of reconsideration*, No. 15-1161, 2016 WL 879995 (E.D. La. Mar. 8, 2016).

> If the clause is broad, the action should be stayed and the arbitrators permitted to decide whether the dispute falls within the clause. On the other hand, if the clause is narrow, the matter should not be referred to arbitration or the action stayed, unless the court determines that the dispute falls within the clause.

*Hornbeck*, 981 F.2d at 754-55 (citing *Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co. (Pennex)*, 767 F.2d 1140, 1145 n.10

5

(5th Cir. 1985), *holding modified by Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327 (5th Cir. 2004) (citing *Prudential Lines, Inc. v. Exxon Corp.*, 704 F.2d 59, 64 (2d Cir. 1983))). "A broad arbitration agreement is 'capable of expansive reach', intended to cover 'all aspects of the relationship' [such that] a dispute then need only 'touch matters covered' by the agreement in order to compel arbitration." *Grant v. Houser*, 469 F. App'x 310, 315-16 (5th Cir. 2012) (quoting *Pennzoil*, 139 F.3d at 1067-68). Clauses containing the "any dispute" language are of the broad type. *Id.* (citing *Sedco*, 767 F.2d at 1144; *Mar-Len of La., Inc. v. Parsons-Gilbane*, 773 F.2d 633, 634 (5th Cir. 1985); *Neal v. Hardee's Food Sys., Inc.*, 918 F.2d 34, 38 (5th Cir. 1990)).

If a court is satisfied that a dispute is subject to arbitration pursuant to a written arbitration agreement, the court shall, on application of one of the parties, "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ." 9 U.S.C. § 3.

Included in the instant record is a document dated July 12, 2016 and clearly labeled "ARBITRATION AGREEMENT." *See* Rec. Doc. 11-3 at 8. The document specifically provides that

> "We", "us" and "Dealer" refer to the Dealer signing below, and includes the Dealer's employees, agents, and parent and affiliated companies and their employees and agents. "Parties" refers to you and us . . . . "Claim(s)" includes any and all disputes, claims or controversies between the Parties relating to the Vehicle or arising out of or relating to: (a) the application for and the

6

> terms of and enforceability of the sale . . . of the Vehicle, (b) the purchase or terms of any warranty, service agreement, maintenance plan, . . . or any other product or insurance, (c) any claims of breach of contract, negligence, misrepresentation, conversion, fraud, or unfair and deceptive trade practices, (d) any claim of a violation of any state or federal statute or regulation, or (e) the Vehicle's condition, warranty, workmanship, servicing, maintenance, or repair.
> . . .
> Upon the request of a party, any and all Claims(s) [sic] shall be decided in binding arbitration . . . .
> . . .
> The parties agree that once one of the parties has elected to arbitrate, binding arbitration is the exclusive method for resolving any and all Claims.
> . . .
> This Agreement evidences a transaction involving interstate commerce. The Parties acknowledge and agree that the [FAA] shall govern any arbitration under this Agreement. The arbitrator's decision shall be final and binding, except for any right of appeal provided by the FAA or the rules of the selected Arbitration Forum.

*Id.* The document was signed by both Plaintiffs and lists "DIXIE RV SUPERSTORES" as the dealer. *Id.* Thus, on its face, it appears that a valid arbitration agreement exists and that Plaintiffs' claims of breach of express and implied warranties, violations of federal statute, and related misconduct fall within the scope of the broad agreement. Nonetheless, Plaintiffs urge the Court to deny Defendants' motion for three reasons.

First, Plaintiffs argue that the document is not a valid contract because it was not signed by a representative of Dixie Motors. Rec. Doc. 14 at 4-6.[2]

---

[2] While there was some dispute as to the authenticity of Plaintiffs' signatures on a separate document, "Plaintiffs do not challenge the authenticity of their signatures" on the instant document. Rec. Doc. 14 at 2. The validity of

7

The Fifth Circuit has previously recognized that the FAA requires only that an arbitration agreement be in writing and that "a party may be bound by an agreement to arbitrate even in the absence of his signature." *Valero Ref., Inc. v. M/T Lauberhorn*, 813 F.2d 60, 64 (5th Cir. 1987) (citing *McAllister Bros. v. A & S Transp. Co.*, 621 F.2d 519, 524 (2d Cir. 1980); *First Citizens Mun. Corp. v. Pershing Div. of Donaldson, Lufkin & Jenrette Sec. Corp.*, 546 F. Supp. 884, 887 (N.D. Ga. 1982)); *see also Arnold v. Sphere Drake Ins., PLC*, No. 92-1509, 1992 WL 348352, at *3 (E.D. La. Nov. 18, 1992) ("An examination of the case law on the issue of whether an arbitration provision is binding reveals several cases which held that a signature is not required. This Court was not directed to any cases, nor did it locate any on its own, in which a court held that a signature is required in order for an arbitration provision to be binding.") (citations omitted); *Figueroa v. W-W Autos., Inc.*, No. 02-201, 2002 WL 31992188, at *4 (N.D. Miss. Nov. 5, 2002) (enforcing a second arbitration agreement where the plaintiff signed the second agreement, the defendant signed the first agreement, and the defendant's name was typed along the bottom of the second agreement); *Hansford v. Cappaert Manufactured Hous.*, 40,160, p. 6 (La. App. 2 Cir. 9/21/05); 911 So. 2d 901, 905-06, *writ denied*, 05-2338 (La. 3/17/06); 925 So. 2d 542

---

Plaintiffs' signatures on the separate document is irrelevant to the instant motion and therefore will not be considered.

(enforcing an arbitration agreement where a husband signed, but his wife and a representative of the manufacturer did not sign).

Here, both Plaintiffs signed the arbitration agreement. Because the FAA does not require the parties to sign the arbitration agreement, Fifth Circuit case law recognizes that an arbitration agreement may be enforced against a non-signatory, and Louisiana case law enforces arbitration agreements where one or more parties failed to sign, the fact that a representative of Dixie Motors failed to sign the document does not invalidate the arbitration agreement. Further, the Court is not persuaded by Plaintiffs' attempt to invalidate a contract that <u>they signed</u>. In *Dufrene v. HBOS Manufacturing, LP*, the Louisiana Fourth Circuit applied the Louisiana Arbitration Law ("LAL," LA. REV. STAT. ANN. §§ 9:4201-17), which is "virtually identical" to the FAA. 03-2201, p. 6 (La. App. 4 Cir. 4/7/04); 872 So. 2d 1206, 1211, *on reh'g* (5/28/04). In that case, the purchasers of a mobile home signed an arbitration agreement, but the seller did not, and the appellate court originally found that, by signing, the purchasers established their knowledge of the existence of a valid arbitration agreement. On rehearing, the court noted that the LAL does not require a written arbitration agreement to be signed and that, absent a signature, "the effect or validity of the agreement may be shown by the actions and conduct by the parties." *Id*. at 1213 (citations omitted). Because the purchasers signed the agreement

9

and the seller filed a motion to stay pending arbitration, the court found that the seller's "failure to sign did not invalidate the agreement and [the seller's] actions show the effect or validity of the agreement." *Id. See also In re Succession of Taravella*, 98-834, p. 3 (La. App. 5 Cir. 4/27/99); 734 So. 2d 149, 151 ("When an agreement lacks a signature, the actions and the conduct of the party or parties, who did not sign, may show the effect or validity of the agreement") (emphasis added) (citations omitted); *Alford v. Johnson Rice & Co.*, 99-3119, p. 5 (La. App. 4 Cir. 11/15/00); 773 So. 2d 255, 258 (noting that written arbitration agreements "do not have to be signed" under the FAA); *Jasper Contractors, Inc. v. E-Claim.com, LLC*, 11-0978, p. 9 n.7 (La. App. 1 Cir. 5/4/12); 94 So. 3d 123, 130 n.7 (noting that when "the party seeking to avoid arbitration has not signed any contract requiring arbitration . . . such a party may not have agreed to submit grievances to arbitration at all") (emphasis added).

Second, Plaintiffs argue that Louisiana law invalidates "any term that fixes venue" in a consumer transaction. Rec. Doc. 14 at 6-7 (citing La. Rev. Stat. Ann. § 51:1418(C) (which provides, in relevant part, that "[t]he following terms of a writing executed by a consumer are invalid with respect to consumer transactions or modifications thereof: . . . any term that fixes venue"); La. Rev. Stat. Ann. § 51:1407(A) ("It being against the public policy of the state of Louisiana to allow a contractual selection of venue or

10

jurisdiction contrary to the provisions of the Louisiana Code of Civil Procedure, no provision of any contract which purports to waive these provisions of venue, or to waive or select venue or jurisdiction in advance of the filing of any civil action, may be enforced against any plaintiff in an action brought in these courts")).

Defendants correctly respond that the FAA preempts any state law that attempts to prohibit the enforcement of otherwise valid arbitration agreements. Rec. Doc. 17 at 3.

"In enacting § 2 of the [FAA], Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties have agreed to resolve by arbitration." *Keating*, 465 U.S. at 10. In other words, "Congress intended to foreclose state legislative attempts to undercut the enforceability of arbitration agreements." *Id.* at 861 (footnotes omitted). *See also Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 281 (1995) (noting that "§ 2 gives States a method for protecting consumers against unfair pressure to agree to . . . an unwanted arbitration provision . . . under general contract law principles . . . . What States may not do is decide that a contract is fair enough to enforce all its basic terms (price, service, credit), but not fair enough to enforce its arbitration clause. The Act makes any such state policy unlawful, for that kind of

policy would place arbitration clauses on an unequal 'footing,' directly contrary to the Act's language and Congress' intent.") (citations omitted); *Perry v. Thomas*, 482 U.S. 483, 491 (1987) (holding that "[t]his clear federal policy places § 2 of the Act in unmistakable conflict with California's § 229 requirement that litigants be provided a judicial forum for resolving wage disputes. Therefore, under the Supremacy Clause, the state statute must give way."); *Aguillard v. Auction Mgmt. Corp.*, 04-2804, p. 8 (La. 6/29/05); 908 So. 2d 1, 8 ("The United States Supreme Court has made it clear that the substantive provisions of the FAA preempt state law . . . courts must enforce arbitration agreements in contracts covered by the FAA, notwithstanding any state statutory or jurisprudential rules to the contrary.").

In *Simpson v. Grimes*, the plaintiffs made the same argument made by Plaintiffs here: that, because they asserted claims under the LUTPA, the arbitration clause "fixing venue" was rendered unenforceable by § 1418. 02-0869, p. 7 (La. App. 3 Cir. 5/21/03); 849 So. 2d 740, 745, *writ denied,* 03-2497 (La. 12/19/03); 861 So. 2d 567, *abrogated on other grounds by Aguillard*, 908 So. 2d 1. The Louisiana Third Circuit rejected this argument because LUTPA claims could not be raised in cases involving securities and, more importantly, "United States Supreme Court jurisprudence unquestionably indicates that the FAA's presumption of

arbitrability preempts any state law to the contrary." *Id.* at 746 (citing *Keating*, 465 U.S. 1).

Louisiana Revised Statute § 51:1418(C) does not act to invalidate otherwise valid arbitration agreements. If it did, it would be preempted by the FAA. Therefore, this argument is without merit.

Finally, Plaintiffs argue that Defendant Thor was not a party to the agreement and therefore cannot compel arbitration. Rec. Doc. 14 at 1. Defendants respond that the arbitration agreement applies to both of them, even though Thor did not sign the agreement, because "Plaintiffs' claims against both Dixie and [Thor] arise out of the purchase of the Motor Home and the [Thor] warranties purchased with the Motor Home" and Plaintiffs allege "joint, concerted and substantially intertwined actions, misconduct and liability" against both Defendants. Rec. Doc. 11-2 at 3-4.

Plaintiffs counter that Thor is not mentioned by name in the agreement, "the term 'manufacturer' is not used, nor is there any direct reference to any claim other than against a 'Dealer', which is Dixie Motors, Inc." Rec. Doc. 14 at 2.

This Court previously explained that a non-signatory may compel arbitration and stay court proceedings when "the non[-]signatory's potential liability derives from the signatory's conduct, and the claims against the non-signatory are based on the

13

same operative facts and are inherently inseparable from the claims asserted against the signatory." *Ryan v. Thunder Restorations, Inc.*, No. 09-3261, 2011 WL 2680482, at *8 (E.D. La. July 8, 2011) (citing *Harvey v. Joyce*, 199 F.3d 790, 796 (5th Cir. 2000); *Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 329 (5th Cir. 1999)). The idea is that litigation against the non-signatory would adversely affect the signatory's right to arbitration. *Id.* (citing *Subway*, 169 F.3d at 329).

Alternatively, a signatory "may be equitably estopped from litigating its claims against non-parties in court and may be ordered to arbitration" when (1) "the signatory . . . must rely on the terms of the written agreement in asserting its claims against a non-signatory" or (2) "the signatory raises allegations of substantially interdependent and concerted misconduct by both the non-signatory and one or more signatories to the contract." *Brown v. Pac. Life Ins. Co.*, 462 F.3d 384, 398 (5th Cir. 2006) (citing *Grigson*, 210 F.3d at 526-27).

The Fifth Circuit clarified in 2014 that under 2009 Supreme Court precedent, "a non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate based on, *inter alia*, equitable estoppel <u>if the relevant state contract law so permits</u>." *Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 261 (5th Cir. 2014) (emphasis added) (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 627 (2009)). "Consequently,

14

prior decisions allowing non-signatories to compel arbitration based on federal common law, rather than state contract law, such as *Grigson*, have been modified to conform with *Arthur Andersen*." *Id.* (emphasis added) (citations omitted).

In *Pershing, L.L.C. v. Bevis*, the Fifth Circuit found that, even though the district court addressed the dispute under federal common law because the parties cited exclusively to federal precedent, "federal law appears to be coextensive with Louisiana law." 600 F. App'x 754, 756 (5th Cir. 2015) (emphasis added) (citations omitted). Accordingly, the Fifth Circuit noted that a non-signatory may compel a signatory to arbitrate in the two "rare" situations anticipated by *Grigson*: (1) where the signatory asserts a contractual claim against a non-signatory "then refuse[s] to honor an arbitration provision contained in that contract" or (2) where "the signatory asserts a claim of 'substantially interdependent and concerted misconduct by both the non[-]signatory and one or more of the signatories to the contract.'" *Id.* (footnotes and citations omitted).

For example, in *Shroyer v. Foster*, the Louisiana First Circuit recognized that non-signatories may be bound to arbitrate when they "sue[] to enforce the provisions of a contract that contains the arbitration language." 01-0385, p. 8 (La. App. 1 Cir. 3/28/02); 814 So. 2d 83, 89, *superseded by statute on other grounds*, as stated in *Green v. Regions Bank*, 13-0771, p. 6 (La. App. 1 Cir.

15

3/19/14); 2014 WL 3555820, at *6. This is because "[t]he party cannot have it both ways, he cannot rely on the contract when it works to [his] advantage and then repudiate it when it works to his disadvantage." *Id.*

Further, this Court recently recognized that "at least one Louisiana appellate court has expressly agreed with *Grigson* and the ability of a court to apply equitable estoppel when the petition alleges substantially interdependent and concerted misconduct." *LeBlanc v. Tex. Brine Co., LLC*, No. 12-2059, 2016 WL 2849506, at *6 n.7 (E.D. La. May 10, 2016) (citing *Saavedra v. Dealmaker Devs., LLC*, 08-1239 (La. App. 4 Cir. 3/18/09); 8 So. 3d 758, 764 n.5, *writ denied,* 09-0875, p. 7 (La. 6/5/09); 9 So. 3d 871) (allowing the non-signatory defendants to invoke the arbitration clause where the plaintiff acknowledged that the defendants, though multiple juridical entities, "formed a single business enterprise," his arguments applied to all defendants, and he used the term defendant to refer to all the defendants)). In *LeBlanc*, even though the party "carefully pleaded its claims against the separate entities," one a signatory and one a non-signatory, "it remain[ed] that the various tortious acts [were] not wholly separate and apart from each other." 2016 WL 2849506, at *8. "[I]t [was] nearly impossible to differentiate where one entity's fault would begin and another's would end." *Id.* Thus, "[t]he Court [was] persuaded that the allegations of misconduct .

16

. . [were] no less 'concerted' or 'interdependent' than those made in the many cases where equitable estoppel was deemed to be appropriate, notwithstanding the 'rare' nature of the remedy." *Id.* (citing *Griffin v. ABN Amro Mortg. Grp. Inc.*, 378 F. App'x 437, 440 (5th Cir. 2010) (where the plaintiffs' claims were "substantially interdependent, as they all relate[d] to the [plaintiffs'] default in terms of payment of the note and deed of trust, and subsequent foreclosure proceedings"); *Brown*, 462 F.3d at 398 (where the claims against the non-signatories would depend, "in some part, upon the nature of" the tortious acts allegedly committed by the signatories and the plaintiffs failed to allege tortious acts committed by the non-signatories that were "separate and apart" from a signatory's); *Ford Motor Co. v. Ables*, 207 F. App'x 443, 448 (5th Cir. 2006) (allowing a non-signatory to compel arbitration where the complaint alleged "substantially interdependent and concerted misconduct" by the signatory and non-signatory and the party opposing arbitration abandoned their argument in light of *Grigson* and its progeny); *Jureczki v. Bank One Tex., N.A.*, 75 F. App'x 272, 274-75 (5th Cir. 2003) (affirming the district court's order compelling arbitration where the plaintiffs relied on the contract containing the arbitration agreement to assert their claims and "[a]t the heart of each of the [plaintiffs'] claims is the allegation that all Defendants

17

acted in concert to fraudulently withdraw funds from their deposit account")).

Here, like the plaintiff's petition in *Saavedra*, the allegations in Plaintiffs' complaint apply to both Defendants. *See, e.g.,* Rec. Doc. 1 at ¶¶ 10 ("Defendants impliedly warranted that the repair work had been performed in a good and workmanlike manner"); 15 ("Defendants failed to repair the vehicle so as to bring it into conformity with the warranties"); 17 ("Plaintiffs directly notified defendants . . . of the defective conditions . . . [and] that they wanted a rescission of the sale . . . but Defendants have failed and refused to buy back Plaintiffs' defective Synergy"); 24 ("Plaintiffs have provided the Defendants sufficient opportunity to repair"); 25 ("Plaintiffs have performed . . . every duty required . . . except as may have been excused . . . by the conduct of the Defendants"); 27 ("Defendants failed to perform the repair work . . . [t]his conduct by those Defendants constitutes a breach of the implied warranties under Louisiana law"); 28 ("As a proximate result of Defendants' misconduct . . . Plaintiffs have incurred . . . legal fees"); 34 ("The actions of Defendants . . . constitute[] . . . a violation of the Magnuson-Moss Warranty Act"); 35 (similar to ¶ 25); 36 ("As a . . . result of the acts and omissions of Defendants"); 37 (similar to ¶ 28); 40 ("Defendants owed a duty of care to Plaintiffs . . . Defendant has a 'high duty' to detect and correct defects . . . Defendants

18

breached this duty"); 41 ("Defendants' attempted repairs . . . were refused or done so negligently"); 42 ("As a . . . proximate result of Defendants' negligent failure to repair"); 47 ("based on Plaintiff[s]' reasonable reliance on the false representations and warranties of the Defendants"). Unlike the party seeking to avoid arbitration in *LeBlanc*, where the court ultimately compelled arbitration anyway, Plaintiffs here do not even attempt to carefully plead separate claims against Defendants Dixie Motors and Thor. Plaintiffs' claims all relate to alleged defects in the motorhome and Defendants' alleged failure to repair those defects. This Court is persuaded that the alleged misconduct is sufficiently "interdependent" to allow a non-signatory, Thor, to compel arbitration against the signatories, Plaintiffs.

## IV. CONCLUSION

Because there is a valid arbitration agreement and Plaintiffs' claims fall within the scope of that agreement,

**IT IS ORDERED** that Defendants' motion (Rec. Doc. 11) is **GRANTED**. Plaintiffs are directed to submit all of their claims to arbitration.

**IT IS FURTHER ORDERED** that this case is stayed and **ADMINISTRATIVELY CLOSED**. <u>No later than thirty (30) days after the arbitrator's final decision</u>, either party may file a motion to reopen for good cause, i.e. due process, attaching the related

19

decision. If the case is disposed of through arbitration, or any other means, Plaintiffs shall promptly file a motion to dismiss within 30 days of that disposition. **Failure to timely comply with any of above deadlines may lead to dismissal of claims without further notice.**

New Orleans, Louisiana, this 5th day of June, 2017.

_____
SENIOR UNITED STATES DISTRICT JUDGE